**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | No.  13 C 429 |
| | ) | |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| WOSVALDO VILLEGAS, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Wosvaldo Villegas brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255.  He is incarcerated at the United States Penitentiary in Leavenworth, Kansas. A jury convicted him of attempted robbery under the Hobbs Act, 18 U.S.C. § 1951, in November 2008, and this Court sentenced him to an eighty-seven month sentence.  For the following reasons, Villegas's denied with one exception – that having to do with the length of his supervised release period.

## BACKGROUND

On February 19, 2007, Jose Diaz Martin Garibay alerted federal law enforcement officials that Wosvaldo Villegas approached him looking for help to rob an armored car.  The FBI began an undercover investigation of Villegas, which included introducing Villegas to an undercover agent to assist them in planning the crime.  Villegas was subsequently recorded discussing details of the robbery—including the possibility that a gun or weapon would be used—during planning conversations and meetings.  The planning process culminated on April 27, 2007 at 9:00 a.m., when Villegas met Garibay at a Walgreens parking lot across the street

from the proposed robbery location, at which point he was arrested. A grand jury indicted Villegas on June 8, 2007, and his trial began on November 10, 2008. After a two-week trial, the jury found Villegas guilty of attempting to obstruct, delay, and affect commerce and the movement of United States currency in the custody, possession, and control of employees of Pendum Inc., by robbery, in violation of 18 U.S.C. §§ 1951–2 on November 20, 2008. *See United States v. Villegas*, 2009 WL 1657072, at *1 (N.D. Ill. June 11, 2009); *United States v. Villegas*, 655 F.3d 662, 665 (7th Cir. 2011) (reciting facts).

Villegas filed a motion to substitute his counsel for the sentencing phase of his trial on December 4, 2008, which the Court granted on December 9, 2008. (07-CR-00260, Dkt. Nos. 112, 115, 116.) He filed a motion for a judgment of acquittal or arrest of judgment or for a new trial on January 20, 2009. (*Id.* at Dkt. No. 118.) The Court denied Villegas's motion and sentenced him on the same day, June 11, 2009. (*Id.* at Dkt. Nos. 131, 132.); *Villegas*, 2009 WL 1657072, at *12. Court sentenced Villegas to 87 months in prison and to five years of supervised release. (07-CR-00260, Dkt. No. 148 at pp. 50–51.) Villegas's prison sentence was 21 months less than the 108 to 135 month advisory Guidelines range sentence sought by the Government. (*Id.* at p. 31.) The Court determined a sentence significantly below the Guidelines range was warranted because Villegas's criminal history comprised minor offenses (e.g. stealing a flash light) and was notably devoid of acts of violence and the use of a gun. (*Id.* at p. 50.) The Court noted that Villegas talked a big game about bringing a gun to the alleged robbery and that was due in part to his low level of mental functioning which both contributed to his decision to cross the line and to engage in the robbery. In finding that Villegas was "more bark than bite," the Court varied below the proposed range and sentenced him to 87 months. (*Id.* at pp. 50–51.)

Villegas's sentence also included five years of supervised release and a five-level gun enhancement. The five-year term of supervised release was recommended to the Court in the Probation Officer's report and not contradicted by the parties at any point. Neither objected when the Court twice asked if there was "anything else" to discuss at the end of Villegas's sentencing. (*Id.* at pp. 51–52.) Whether the five-level gun enhancement should apply to Villegas was actively disputed during the sentencing hearing. (07-CR-00260 at Dkt. Nos. 132, 148.) The Government argued that the enhancement should apply because it was reasonably foreseeable that Garibay would have a gun on the day the robbery was to take place; Villegas's counsel countered that it was Garibay and the Government who pushed the use of a gun during the offense, so the enhancement should not apply. (*Id.* at Dkt. No. 148, pp. 11–16.) This Court ultimately held the enhancement was appropriate because it was reasonably foreseeable to Villegas that a gun would be present: he was recorded discussing the need for a weapon to commit the robbery, and a weapon was, in fact, present the day of the robbery. (*Id.*)

On appeal, Villegas argued, among other things, that he was convicted based on insufficient evidence and that the five-level gun enhancement was applied in error. *Villegas*, 655 F.3d at 668. On August 23, 2011, the Seventh Circuit Court of Appeals upheld his conviction, finding the Government presented sufficient evidence to convict Villegas, and affirmed this Court's application of the five-level gun enhancement. *Id.* at 669, 674–77. Villegas petitioned for a rehearing and a rehearing *en banc*, and both were denied on October 17, 2011. *Id.* at 662. On January 14, 2013, one year and 89 days later, Villegas provided the present petition for a writ of habeas corpus to the prison mailing system, and this Court received it on January 17, 2013.

Villegas presents four claims in his petition:

1. The Court exceeded the statutory maximum supervised release and defense counsel was ineffective in failure to object or to preserve for appeal;

2. Trial counsel was factually ineffective for not objecting to the introduction of pictures or video of armored truck;

3. The addition of five levels for the firearm on the day the robbery was alleged to be taking place was misplaced;

4. Trial counsel was ineffective for failing to raise "several points" that would have been "probative to the jury during trial" and "altered the verdict."

## DISCUSSION

### I.    Timeliness of Villegas's Habeas Petition

As a threshold issue, the Government argues that Villegas's petition is untimely because it was filed more than one year after the Seventh Circuit affirmed his conviction on August 23, 2011, in violation of the one-year statute of limitations in 28 U.S.C. § 2255(f).   However, Villegas correctly counters that the clock started running on the statute of limitations 90 days after the Seventh Circuit denied his request for rehearing, making his petition timely because it was placed in the prison mailing system on January 14, 2013.   Under 28 U.S.C. § 2255(f), the one-year limit to file a habeas corpus petition "shall run [from] the date on which the judgment of conviction becomes final."   A conviction becomes final when the 90-day time period for petitioning the United States Supreme Court for a *writ of certiorari* expires.   *Clay v. United States*, 537 U.S. 522, 527 (2003).   Supreme Court Rule 13(3) states that the 90-day time limit to petition for a *writ of certiorari* starts running either when the appellate court renders a decision or, if a rehearing with that appellate court is sought, on the date the rehearing is denied.

Villegas's petition to the Seventh Circuit for rehearing and rehearing *en banc* was denied on October 17, 2011.   The 90-day period he had to file a petition for a *writ of certiorari* from the

United States Supreme Court ended on January 15, 2012. One year from January 15, 2012 is January 15, 2013. Villegas's habeas petition entered the prison mailing system on January 14, 2013 and is therefore timely. *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999) (statute of limitations runs for *pro se* habeas corpus petitions when the prisoner provides the petition to the proper prison authorities).

## II.    Ineffective Assistance of Counsel

Villegas argues that his counsel was constitutionally ineffective for failing to adequately present certain pieces of evidence and object to others during and after his trial, resulting in his conviction. The Government argues that Villegas's ineffective assistance of counsel claims attempt to relitigate the insufficient evidence arguments he made on direct appeal. This Court and the Seventh Circuit Court of Appeals have indeed already analyzed Villegas's insufficient evidence arguments and found that the Government did put before the jury sufficient evidence to obtain a guilty verdict. *Villegas*, 2009 WL 1657072; *Villegas*, 655 F.3d 662.

To prevail on a claim of ineffective assistance of counsel, Villegas must establish that he was prejudiced as a result of his counsel's alleged deficiencies under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 694). The burden of proof on a defendant asserting an ineffective assistance of counsel claim is a heavy one. *See Harris v. Reed*, 894 F.2d 871, 874 (7th Cir. 1990). "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Under *Strickland*, the moving party must prove that: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the attorney's deficient performance prejudiced the

5

defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell*, 497 F.3d at 761.

In applying the *Strickland* test, the Court's examination of an ineffectiveness of counsel claim is "highly deferential" to counsel, presumes reasonable judgment, and declines to "second guess strategic choices." *Valenzuela v. United States*, 261 F.3d 694, 698 (7th Cir. 2001) (citing *Strickland*, 466 U.S. at 689); *see also Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000) ("[The Court] must resist a natural temptation to become a Monday morning quarterback."). If the Court finds either the performance prong or the prejudice prong of the *Strickland* test to be lacking, then there is no need to consider the other prong and the petition fails as a matter of law. *See United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990). "A defendant's failure to satisfy either prong is fatal to his claim," *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993), and if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Villegas alleges over twenty errors[1] committed by his trial counsel that can be categorized into seven groups.

## A.  Previously Decided Arguments are Barred by the Law of the Case

A collateral attack under § 2255 is the proper place to raise ineffective assistance of counsel claims. *Massaro v. United States*, 538 U.S. 500, 504 (2003). But such a collateral attack cannot be used to obtain a second opinion on an argument presented and decided earlier. *E.g.*, *United States v. Flores*, 2014 WL 28642, *3, — F.3d — (7th Cir. Jan. 3, 2014) (if a petitioner raises an ineffective assistance of counsel claim on direct appeal, he cannot raise it again in his

---

[1] In Claim 4, Villegas lists twenty facts that he believes his trial counsel should have argued or done a better job arguing. They are cited "4-1" through "4-20."

§ 2255 habeas petition); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) ("Invoking the doctrine of the law of the case, the courts, including our court, forbid a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal.").

Villegas directly appealed the jury's verdict to this Court and the Seventh Circuit, asking for either a judgment of acquittal, or else for a new trial. In the context of those motions, Villegas argued to this Court, among other things, that: (1) the five-level gun enhancement was improper; (2) the Government did not prove beyond a reasonable doubt that he was not entrapped into committing the crime; (3) there was no evidence that he took a substantial step towards committing the robbery; and (4) that his trial counsel was ineffective for failing to call the confidential informant to testify. *Villegas*, 2009 WL 1657072. Villegas only appealed this Court's rulings on the sufficiency of the evidence and the five-level gun enhancement; both were affirmed. *Villegas*, 655 F.3d 662. Nevertheless, all four of these previously considered and rejected arguments also form the basis of four out of five of his substantive ineffective assistance of counsel claims. Because these arguments have already been substantively ruled upon, the Court declines to give Villegas another bite at the apple and denies them. *See White*, 371 F.3d at 902; *United States v. Winbush*, 2011 WL 6122582, at *8 (N.D. Ind. Dec. 8, 2011). But even if these arguments are properly recast as ineffective assistance of counsel claims, they would fail on the merits.

## B. Trial Counsel[2]

### 1. Photographs and video of an armored truck

In Claims 2 and 4-10, Villegas alleges that his counsel should have objected to the display at trial of photographs and video of an armored truck that was not at issue in his case. He argues this demonstration had a prejudicial effect against him because it might have caused the jury to think he was accused of robbing a more heavily reinforced "truck" rather than the van in the Government's indictment. Villegas claims he instructed his attorney to object to the evidence but that his attorney refused to do so. The Government argues the evidence was properly admitted into evidence and offered corroborating evidence to support its allegations.

Villegas's argument fails because he cannot show that his trial counsel's failure to object to this photograph created sufficient prejudice to satisfy the *Strickland* test. The Seventh Circuit affirmed this Court's ruling that the Government presented sufficient evidence to convict Villegas. It found that he took a substantial step towards committing the robbery because he was more than a "mere talker," and that he would have committed the crime had it not been interrupted. *Villegas*, 655 F.3d at 669. It also found that there was sufficient evidence to prove "actual or threatened force, or violence" because there were numerous references to violence in the recorded conversations the Government presented to the jury. *Id.* What the armored truck looked like was not a factor in the court's analysis—the numerous recordings containing Villegas's image and voice as he planned the attempted robbery are what swayed its analysis. Therefore, even if not objecting to the introduction of the photo was an error, it was harmless because there was more than enough additional evidence to persuade a reasonable juror that

---

[2] Villegas obtained new counsel for the sentencing phase of his trial. The Court discusses below Villegas's argument that his sentencing phase counsel was also ineffective.

Villegas was guilty. That Villegas asked his attorney to object to the introduction of the photos and he did not is not evidence of ineffective assistance of counsel because an attorney need not raise every colorable objection or claim, even if specifically requested to do so by his client. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (holding that appellate counsel need not make every claim demanded by her client); *Gov't of V.I. v. Forte*, 865 F.2d 59 (3d Cir. 1989) ("[W]e do not imply that any time a trial attorney does not carry out her client's request she may be held to be ineffective.").

### 2. Five-level firearm enhancement

Villegas recasts his objection to the five-level gun enhancement as an argument that his trial counsel[3] was ineffective because he poorly argued that there was "no showing of the firearm at the time of arrest," which Villegas believes negates the five-level sentencing increase. In making this argument, Villegas insists that he did not know the gun was present, that no robbery was to take place when he was arrested, and that a more effective presentation of this evidence at trial would have prevented the Government from seeking the five-level increase at sentencing. This claim fails because it does not matter that Villegas did not have a gun on him when he was arrested or that he did not know that Garibay had a gun. Instead, Villegas could be sentenced based on the "'reasonably foreseeable acts and omissions' of Garibay that occurred 'in preparation' for the offense." *Villegas*, 655 F.3d at 676. *See also* U.S.S.G. § 1B1.3(a)(1)(B) (a defendant may be held responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" under the range prescribed by the Sentencing Guidelines); *see also United States v. Williams*, 553 F.3d 1073, 1082 (7th Cir. 2009). Therefore, because Villegas knew it was possible that a gun would be used to commit the crime

---

[3] Villegas does not contend that his post-trial counsel ineffectively argued this issue at sentencing or on appeal.

but went along with the plan anyway, he shared blame for the gun's presence and merited an increased punishment:

> In this case, Villegas on two occasions claimed that his 'friend' in the armored vehicle would just hand over the money; however, Garibay specifically stated to Villegas that 'if the guy tries to pull one out, then I do . . . I'm going to have to shoot him.' On the night before the attempted robbery, when Garibay showed Villegas the gun and bulletproof vest, Villegas asked '[d]oes it work and everything,' and inquired as to whether Garibay was planning to wear the vest. There was also testimony at trial that law enforcement placed the gun in Garibay's car the morning of the attempted offense. So Garibay 'possessed' the gun 'in preparation' for the attempted offense, and this possession was reasonably foreseeable to Villegas. It does not matter that Villegas himself never possessed the weapon.

*Id.* Villegas does not argue how any different presentation of the evidence would have altered the outcome of his sentencing.

Moreover, Villegas's sentencing phase counsel (who Villegas does not argue was ineffective in this claim) argued against the five-level increase both at the hearing and on appeal, but it was rejected both times. At the sentencing hearing, Villegas's counsel vigorously argued that the gun came from Garibay, that Villegas himself never possessed a gun, and that no gun was ever presented during the trial. (07-CR-00260, Dkt. No. 148 at pp. 14–15.) The Court nevertheless found that the enhancement was appropriate because Villegas was recorded discussing taking a gun to the robbery and that a gun was, in fact, brought that day, even though Villegas himself did not possess it. (*Id.* at pp. 15–16.) The Seventh Circuit agreed with this analysis and affirmed the sentence. *Villegas*, 655 F.3d at 674–77. The Court therefore rejects Villegas's ineffective assistance of counsel claim based on the application of the five-level gun enhancement.

Villegas urges that evidence of the gun was not submitted to the jury or proved beyond a reasonable doubt in his case, and that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny, the Court should not have considered the presence of a firearm when it sentenced him as a result. In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490; *accord Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013) ("Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."). However, it is *not* "impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Apprendi*, 530 U.S. at 481 (emphasis in original). First, Villegas does not explain what his trial counsel (as opposed to his post-trial counsel) should have done differently to accommodate the *Apprendi* line of cases. Second, the statutory maximum sentence for robbery under 18 U.S.C. § 1951 is twenty years, so adding a five-level gun enhancement does not exceed the statutory maximum punishment. Finally, as discussed above, the Court was within its authority to apply the five-level increase under the Sentencing Guidelines. Villegas therefore did not receive ineffective assistance of counsel regarding the five-level gun enhancement at either stage of his trial.

### 3. Entrapment evidence

The Court considered the proposal by the Defense to use the entrapment defense and after hearing testimony granted Defense counsel's request to present the defense. The jury was permitted to hear evidence and argument that the Government entrapped Villegas. After deliberating, however, the jury rejected that defense. This Court has already expressly held that

11

the Government presented sufficient evidence to allow the jury to conclude that Villegas was not entrapped into committing the robbery. *Villegas*, 2009 WL 1657072, at *2. Nevertheless, Villegas recasts his argument to the contrary as an ineffective assistance of counsel claim by arguing that the following pieces of evidence should have been more competently presented at his trial:

- 4-1: "The CI initiated the crime and then went to authorities with information."

- 4-2: "The CI continued to push the crime forward, where Petitioner would have been happy to let it drop as simple conversation in speculation. (see Affidavit of Villegas)"

- 4-3: "The CI was creating a means by which he might be able to remain in the united States, because he was under pending deportation proceedings. (Tr. 316-317)"

- 4-4: "The CI contacted Petitioner 135 times by telephone in 59 days, which equates to about 2.3 calls per day made by the CI in pursuit of the robbery. (Tr. 992)"

- 4-5: "The phone call on March 2, 2007 was to try to put pressure on Petitioner to get involved in the planned robbery. (Tr. 530-532)"

- 4-6: "The CI provided everything for the robbery, except for the hat he took from Petitioner's head the day of arrest."

- 4-12: "Petitioner was taken to case the robbery by the CI, never wanted to go there, but did so under pressure."

- 4-14: "The CI was the one who suggested the criminal activity not Petitioner."

- 4-16: "The agents claim that their equipment broke down, but the real reason they would not produce that tape was because Petitioner told the CI that he did not want any involvement in the robbery, and this again constitutes government misconduct."

But this Court has already considered this evidence and nevertheless found that the following facts were sufficient "to allow the jury to conclude that Villegas was not entrapped into committing the attempted robbery[:]"

> The government introduced evidence that it was Villegas' idea to rob the armored car and not an idea suggested by the government. The government introduced evidence that Villegas came up with a plan and sought the assistance of Rudy Garibay ('Garibay'), a Cooperating Informant, and Special Agent ('SA') Araya, an undercover agent with the Federal Bureau of Investigation ('FBI') who, unbeknownst to him at the time, were working for law enforcement: The government introduced numerous recorded conversations between Villegas, Garibay and SA Araya in which Villegas actively discussed the details of the robbery, including but not limited to, what role each of them would play, the use of a rental vehicle to execute the robbery, the use of stolen plates for the robbery, the getaway route to be followed after the robbery, storage of the getaway vehicle in Villegas' garage after the robbery and splitting the proceeds from the robbery.

> The government also introduced video recordings where Villegas was seen on tape having meetings with Garibay and/or SA Araya to discuss the execution of the robbery. These meetings capture Villegas telling Garibay and SA Araya that he has an inside man who works for the armored car company but that he is not going to tell his inside man the full plan so he can pass a polygraph test if questioned by the police. The recordings also show Villegas discussing the possibility of using a taser on his inside man during the robbery. In one particular video, Villegas is sitting at a restaurant table with Garibay, looking around furtively while leaning in to discuss the robbery. In another video, taken on April 27, 2007, the day of his arrest, Villegas is seen arriving at a Walgreens parking lot to meet Garibay. Villegas pulls into the lot, leaves his car running and hands Garibay a stolen license plate to be used during the execution of the robbery. The jury also heard evidence that Villegas brought a garage door opener with him that day so that he would have access to a place to store the getaway car. The government also introduced evidence that Villegas wanted SA Araya eliminated from the robbery plan because he did not trust him and that after SA Araya was eliminated from the plan, Villegas did not chose to abandon the plan but instead went ahead with his preparations. The government also introduced evidence of Villegas criminal history, which included a prior

> conviction for identity theft, to demonstrate predisposition. Accordingly, viewing the evidence in the light most favorable to the government, the jury had sufficient evidence to conclude that Villegas was not entrapped into committing the charged offense.

*Villegas*, 2009 WL 1657072, at *2. Villegas states that the Government's evidence was favored by the jury because his counsel failed to "fully develop" the evidence that favored his entrapment defense. But, as this Court has already established, Villegas's attorney elicited testimony on these points from Villegas himself and an expert witness who spoke to Villegas's susceptibility. Villegas's attorney then successfully persuaded the Court (and even the Government) that an entrapment defense was appropriate, and proceeded to strenuously argue the merits of that defense with the jury in his closing argument. Far from ineffective assistance of counsel alleged by Villegas, defense counsel exhibited spirited, determined, proficient and skilled advocacy. Villegas does not explain what more his trial counsel could have done to advance this point because he cannot. The Court therefore rejects Villegas's ineffective assistance of counsel claim on this ground as well.

### 4. Substantial step evidence

Villegas also reargues that there was insufficient substantial evidence by alleging that his trial counsel ineffectively presented and argued the pertinent evidence. Specifically, Villegas states:

- 4-7: "The only fact that made any indication that the robbery was then in process was the garage door opener in Petitioner's car, however, that is where it always was, just like everyone in America."

- 4-8: "There was no substantial step towards committing the robbery, as the CI was not going to the robbery from the Walgreen lot, but to his brother's house, and then to pick up another person, Gino, and factually the Armored Van was not even coming that day at all, so the alleged final step and going to commit the

14

robbery, is false and constitutes no substantial step towards the robbery, which makes the governments assertion false, which amounts to government misconduct."

- 4-9: "The government stated in closing that we discussed taking th[e] money to Mexico in VCR's, however, that conversation was about counterfeit money, not robbery money, which again equates to government misconduct."

- 4-11: "The garage door opener was never produced for the CI's use."

- 4-13: "Petitioner was never a part of a robbery, but the CI and Gino were the robbers."

- 4-15: "There was no Armored Van scheduled to be there at 10:00 o'clock that day, and contrary to the government's assertion, no robbery could have been perpetrated at that location that day, which eliminates the so call final or substantial step toward the actual robbery. Alleging that the robbery was to take place the amounts to government misconduct."

- 4-19: "Garibay the CI asked to borrow my hat on the day of arrest, and that can not reach the level of substantial step toward the completion of the robbery."

But Villegas's trial counsel presented these facts and arguments to the jury in some form. And yet again, this Court and the Seventh Circuit have already considered it and are in agreement that the Government presented sufficient evidence for the jury to conclude that Villegas took a substantial step towards committing the robbery. The Seventh Circuit found as follows:

Villegas first argues that the government failed to prove that he took a substantial step toward the completion of the crime. The evidence produced at trial, however, did not portray Villegas as a mere 'talker,' but made reasonably clear that had Villegas not been interrupted, he would have participated in the robbery. First, on the day of his arrest, Villegas arrived at a pre-arranged meeting location approximately a mile away from the ATM location, and told Garibay that he had seen the armored truck 'over there.' Villegas brought with him the license plates to be used on Garibay's car, observed Garibay change the rear plate, discussed with Garibay what hat Garibay would wear during the robbery, and

had in his car a garage door opener that Villegas previously said he
would give to Garibay to use after the robbery. All of this
happened just one day after Villegas and Garibay met to discuss
the details of the robbery. During that meeting, Villegas asked
Garibay if the gun in his trunk 'work[ed] and everything,' and the
two agreed to meet the next morning. These acts also follow
almost eight weeks of recorded conversations in which specific
details of the robbery were discussed. In this context, Villegas's
conduct on the day of his arrest went beyond mere preparation and
was strongly corroborative of the firmness of his criminal intent.
Viewed in the light most favorable to the government, we find that
a rational trier of fact could have found that Villegas's conduct
constituted a substantial step towards the commission of a robbery.

*Villegas*, 655 F.3d at 669 (citations omitted). Villegas's attempt to recast his substantial step

argument as an ineffective assistance of counsel claim therefore fails.

Particularly vexing for Villegas is the fact that the crime could not possibly have taken

place on the day he was arrested. Courts have long rejected the doctrine of the "impossibility" as

a defense to the inchoate crime of attempt. It is well-established that "impossibility of

completing the crime because the facts were not as the defendant believed is not a defense" to

attempt. *United States v. Williams*, 553 U.S. 285, 300 (2008); *United States v. Cote*, 504 F.3d

682, 687 (7th Cir. 2007) ("[F]actual impossibility or mistake of fact is not a defense to an

attempt charge." (citing *United States v. Cotts*, 14 F.3d 300, 307 (7th Cir. 1994)); *see also*

*Kunkle v. Indiana*, 32 Ind. 220, 232 (1869) ("And, on the whole, we may deem the true doctrine

to be, that, where the object is not accomplished, simply because of obstructions in the way, or

because of the want of the thing to be operated upon, when the impediment is of a nature to be

wholly unknown to the offender, who used appropriate means, the criminal attempt is

committed."); *Connecticut v. Wilson*, 30 Conn. 500, 506 (1862) ("[T]he only safe rule is, that the

attempt is complete and punishable, when an act is done with intent to commit the crime, which

is adapted to the perpetration of it, whether the purpose fails by reason of interruption, or because

there was nothing in the pocket [in the case of a defendant accused of attempting to pickpocket], or for other extrinsic cause."). A jury may convict a defendant for attempting to commit a crime that could not have been committed because that defendant is still worthy of punishment—he had a guilty mind and intended to but could not commit the crime. *See United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir. 1985) ("[To be found guilty of attempt,] the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting.").

That impossibility is not a defense to an attempt charge was argued by the Government in its closing argument and discussed in this Court's charge to the jury. The Government argued:

> [I]t's clear here that [Villegas] could have never actually completed the crime, because it was being controlled by law enforcement. The FBI was surveilling him. But to that point, you'll be instructed that factual impossibility or mistake of fact is not a defense to an attempt charge. Only the defendant's belief is relevant. A futile attempt because of factual impossibility is an attempt still the same.
>
> And I anticipate that Mr. Zinger's going to get up here. He's going to argue, Well, the armored truck wasn't supposed to be there 'til 5:00. He showed up at 9:00. He couldn't have robbed the armored truck. He would have been waiting there for eight hours. None of that matters.
>
> Factual impossibility is not a mistake of fact – factual impossibility is not a defense to an attempt. If the car never showed up, it doesn't matter. If a person thinks that they're shooting at an individual and is actually a mannequin, that's not a defense.

(07-CR-00260, Dkt. 163 at pp. 71–72.) This Court then instructed the jury: "Factual impossibility or mistake of fact is not a defense to an attempt charge; only the defendant's belief is relevant. Futile attempts because of factual impossibility are attempts still the same." (*Id.* at p. 137.) The Court then took impossibility into account when it sentenced Villegas. In

determining Villegas's sentence, the Court found that planning to commit a robbery involving weapons that could potentially harm innocent bystanders is a serious offense, and that what matters is not that the crime did not happen, but that there was an intent to commit it. Villegas's trial counsel could not have ethically made arguments that impossibility required acquitting Villegas, and the Court finds that his counsel was not ineffective on this claim.

### 5. No testimony from the Government's confidential informant at trial

The Court rejects claims 4-17 and 4-18 because it has already ruled on them:

> [D]efense counsel made a strategic decision not to call the CI as a defense witness; *a wise decision unless defense counsel wanted to be charged with helping to prove the Government's case. The CI was equipped with information that could severely damage [Villegas's] defense.* Villegas asserts that the CI should have been called because he could have testified about his incentives to induce Villegas to commit the robbery, his immigration problems, and his financial arrangement with the Government. All of this information, however, was already presented at trial through other witnesses, including SA Burke. Villegas has presented nothing that demonstrates that his trial counsel failed to exercise 'reasonable professional judgment' when he made a tactical decision not to call the CI as a witness at trial, and therefore he is not entitled to a new trial based on his claim of ineffective assistance of counsel.

*Villegas*, 2009 WL 1657072, at *9 (emphasis added). *See also White*, 371 F.3d at 902; *Valenzuela v. United States*, 261 F.3d 694, 699–700 (7th Cir. 2001) ("[A] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." (citing *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997)).

### 6. Cumulative impact of claims against Villegas's trial counsel

Villegas's trial counsel was not ineffective for any of the substantive reasons Villegas argues. Their cumulative effect therefore fails to prove the same. *See, e.g.*, *Reid v. United States*, 871 F. Supp. 2d 324, 341 (D. Del. 2012) ("The court has already concluded that none of

counsel's alleged individual errors amounted to ineffective assistance, and the court's conclusion remains the same even if those alleged errors are considered cumulatively. As aptly stated by the government, 'the sum of zero plus zero is zero.'"); *Missouri v. Birkett*, 2009 WL 3625392, at *13 (E.D. Mich. Oct. 29, 2009) ("Because Petitioner's individual claims regarding prosecutorial misconduct and ineffective assistance of counsel lack constitutional merit, he cannot establish that habeas relief is warranted based upon a claim of cumulative error. 'That is, zero plus zero equals zero.'"); *United States v. Merlino*, 2 F. Supp. 2d 647, 669 (E.D. Pa. 1997) ("As we have discussed, not one of [the defendant's] ineffective assistance of counsel claims has merit. Therefore, the cumulative effect of each non-error does not add up to ineffective assistance of counsel: zero plus zero is still zero.").

## III.    Sentencing Error

Based on the Probation Office's recommendation and report and the lack of any objection to the report regarding supervised release, the Court was led to believe that Villegas could receive up to five years of supervised release. After hearing arguments on various issues from both sides, none of which contested the possible term of Villegas's supervised release, the Court determined that a five-year term would benefit Villegas in his rehabilitation. Upon further investigation, Villegas now argues that five years of supervised release exceeds the maximum sentence permitted by law, and the Government agrees.

Villegas was convicted of an attempted Hobbs Act robbery pursuant to 18 U.S.C. § 1951, which is a Class C felony under 18 U.S.C. § 3559(a)(3) ("An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is . . . less than twenty-five years but ten or more years, as a Class C felony . . . ."). The maximum term of supervised release for a Class C felony is three years. 18

U.S.C. § 3583(b)(2). The Sentencing Guidelines recommend a supervised release sentence of between one and three years for Class C felonies. U.S.S.G. § 5D1.2. The Court therefore grants Villegas's motion, strikes its previous sentence of five years of supervised release, and re-sentences him to three years of supervised release following his incarceration. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1388–89 (2012) (finding that Sixth Amendment remedies should be "tailored to the injury suffered" and "neutralize the taint of a constitutional violation," but "not grant a windfall to the defendant" (citations omitted)); *United States v. Jaimes-Jaimes*, 406 F.3d 845, 851 (7th Cir. 2005) (correcting sentencing error when the defendant, defense counsel, Assistant United States Attorney, probation officer, and district court judge failed to notice it at sentencing); *United States v. Guzman-Bruno*, 27 F.3d 420, 423 (9th Cir. 1994) (finding that a district court sentencing a defendant to a term of supervised release exceeding the statutory maximum is plain error and remanding to the district court to correct it).

Villegas argues that his sentencing hearing counsel (he obtained new counsel for the sentencing phase of his trial) was constitutionally ineffective for not noticing or correcting this error at the time. However, Villegas did not have a Sixth Amendment right to the effective assistance of counsel during the supervised release portion of his sentencing hearing. This is because a criminal defendant is not constitutionally entitled to counsel when the potential punishment is not "actual imprisonment." *Scott v. Illinois*, 440 U.S. 367, 373 (1979) ("[A]ctual imprisonment as the line defining the constitutional right to appointment of counsel."); *see also Glover v. United States*, 531 U.S. 198, 203 (2001) (finding that a sentencing error resulting in increased "actual jail time" satisfies the prejudice prong of the *Strickland* test). Supervised release, although restrictive, is by its very terms "release" from prison, not imprisonment. As

such, even though Villegas's counsel did make a mistake, that error was not a violation of Villegas's constitutional rights.

## IV.     Certificate of Appealability

Unless this Court issues a certificate of appealability, an appeal may not be taken to the United States Court of Appeals from this Court's judgment in a § 2255 proceeding.  *See* 28 U.S.C. § 2253(c); *see also Buie v. McAdory*, 322 F.3d 980, 981 (7th Cir. 2003).  The decision of whether or not to grant a certificate of appealability is a screening device used to conserve judicial resources and prevent the Courts of Appeals from being overly burdened with unmeritorious petitions to vacate, set aside, or correct a sentence pursuant to § 2255. *See Young v. United States*, 124 F.3d 794, 799 (7th Cir. 1997).  Courts may only grant a certificate of appealability when the petitioner has presented "a substantial showing of the denial of a constitutional right."  28 U .S.C. § 2253(c)(2); *see also Gonzalez v. Thaler*, –––U.S. –––, –––, 132 S.Ct. 641, 649 (2012).  A substantial showing of the denial of a constitutional right requires the petitioner to show that reasonable jurists could find room to debate whether the petition should have been resolved in a different manner or that the issues presented are adequate to entitle the petitioner to proceed further with his claims.  *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

Villegas's ineffective assistance of counsel claim is denied on procedural grounds and, in the alternative, on the merits.  When a court dismisses a petition on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling."  *Slack,* 529 U.S. 485.  "Where a plain procedural bar is present and the

district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484. Here, it is indisputable that Villegas raised the following claims on direct appeal: (1) the five-level gun enhancement was improper; (2) the Government did not prove beyond a reasonable doubt that he was not entrapped into committing the crime; (3) there was no evidence that he took a substantial step towards committing the robbery; and (4) that his trial counsel was ineffective for failing to call the confidential informant to testify. Accordingly, Villegas has failed to make a substantial showing of the denial of a constitutional right, and the Court denies him a certificate of appealability for the claims raised in his habeas petition. *See* 28 U.S.C. § 2253(c)(2); *see also Gonzalez*, 132 S.Ct. at 649.

To obtain a certificate of appealability on the merits, Villegas must demonstrate that reasonable jurists would find this Court's assessment of the constitutional claims either debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack*, 529 U.S. at 484). Villegas has not made such a showing here: reasonable jurists could not find room to debate the Court's ruling on the constitutional merits of Villegas's ineffective assistance of counsel claim. Indeed, the substantive claims underlying his ineffective assistance of counsel arguments have already been considered and rejected by this Court and the Court of Appeals, making it unlikely that any other jurist would rule differently. *Villegas*, 2009 WL 1657072; *Villegas*, 655 F.3d 662. Accordingly, because Villegas has failed to make a substantial showing of the denial of a constitutional right, the Court denies Villegas a certificate of appealability for the ineffective assistance of counsel claim raised in his § 2255 petition. *See* 28 U.S.C. § 2253(c)(2); *see also Gonzalez*, 132 S.Ct. at 649.

## **CONCLUSION**

For the reasons set forth above, the Court grants in denies Villegas's Petition for Writ of Habeas Corpus with one exception: the Court grants the petition and orders that the supervised release sentence be changed to three years. The Court denies a certificate of appealability.


_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: January 15, 2014